UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER A. HARRIS, | : |
| Plaintiff, | : Civil Action No. 25-3063 (EP) (MAH) |
| v. | : |
| DOCTORS AT THE NEWARK UNIVERSITY HOSPITAL, et al., | : OPINION |
| Defendants. | : |

## I.   INTRODUCTION

Presently before the Court is the motion by Plaintiff pro se Alexander A. Harris ("Plaintiff") for the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). Mot. to Appoint Pro Bono Counsel, Nov. 7, 2025, D.E. 10. The Court has received no opposition to the motion. The Undersigned has considered this matter without oral argument. Fed. R. Civ. P. 78; Local Civ. R. 78.1. For the reasons set forth below, Plaintiff's motion is **DENIED**.

## II.   BACKGROUND

Plaintiff, a detainee at Hudson County Correctional Facility ("HCCF"), initiated this action on April 22, 2025, alleging various violations of his constitutional rights under 42 U.S.C. § 1983. Compl., Apr. 22, 2025, D.E. 1. Plaintiff alleged Defendants Dr. Smycheck, Sharonda Murrell ("Murrell"), Michael Dantico ("Dantico"), Becky Scott ("Scott"), Oscar Aviles ("Aviles") and a Defendant only identified as "Edwards" (collectively, "Defendants") denied Plaintiff access to adequate medical care and the courts, violated his Fourteenth Amendment due process right to privacy in medical records, and committed state law medical malpractice and

HIPAA[1] violations.  Compl., at 4.  Specifically, Plaintiff alleges that after Plaintiff underwent several medical procedures, Defendants deprived Plaintiff of food for five days.  *Id.*  Plaintiff additionally alleges that further complications arose after "a catheter was put in."  *Id.*  Thereafter, Plaintiff asserts that, despite requesting to view his medical records, Defendants not only denied access to those records, which Plaintiff avers are necessary to properly name Defendants or amend his complaint, but also forced Plaintiff to send his medical records to third parties.  *Id.* at 4-5.  Plaintiff seeks various forms of damages for his injuries and injunctive relief forcing the jail and hospital to release his medical records.  *Id.* at 5.

In conjunction with filing his Complaint, Plaintiff filed an application to proceed *in forma pauperis* ("IFP").  App. to Proceed IFP, D.Es. 1-1 and 1-2 (collectively, "IFP Application").  In a written Opinion and accompanying Order, the Honorable Evelyn Padin, United States District Judge, granted that application on June 17, 2025.  Op., D.E. 3, at 1; Order, D.E. 4.  In that Opinion, Judge Padin also screened Plaintiff's complaint as part of the IFP screening process, pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2).  D.E. 3, at 1.  Judge Padin allowed Plaintiff's Fourteenth Amendment due process right to medical privacy claims to proceed because Plaintiff alleged those records could only be accessed and viewed through third parties.  *Id.* at 7.  However, Judge Padin dismissed without prejudice all other claims for failure to state a claim and provided Plaintiff forty-five days to amend his complaint with respect to those claims.  *Id.* at 8.

Plaintiff did not file an amended complaint.  *See* Dkt.  On August 12, 2025, the U.S. Marshals Service returned summons as executed on August 7, 2025 against Defendants Aviles,

---

[1]  Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq*.

Dantico, Murrell, Scott, and Dr. Smycheck (collectively, the "Served Defendants"). D.E. 7. The U.S. Marshal that attempted to serve Edwards notated that Edwards "d[id] not work" at the HCCF. D.E. 8. The Served Defendants failed to answer or otherwise respond to the Complaint by their August 28, 2025 deadline. Plaintiff took no further action.

On October 7, 2025, Judge Padin ordered Plaintiff to show cause why the Court should not dismiss the action for failure to prosecute under Federal Rule of Civil Procedure 41(b). O.S.C., D.E. 9. On November 7, 2025,[2] Plaintiff answered the order to show cause and filed the instant motion for appointment of pro bono counsel. D.E. 10.

### III. DISCUSSION

In civil actions, court appointment of pro bono counsel is neither a constitutional nor statutory right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Instead, district courts have broad discretion to appoint counsel for those unable to afford it pursuant to 28 U.S.C. § 1915(e). *Montgomery v. Pinchack*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 157-58 (3d Cir. 1993)). Moreover, "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d at 499; *Houser v. Folino*, 927 F.3d 693, 700 (3d Cir. 2019).

As a threshold issue, courts must determine whether a plaintiff's case has "some merit in fact and law." *Montgomery*, 294 F.3d at 499. If it does, the Court then must weigh the following

---

[2] Plaintiff's deadline to respond to the Order to Show Cause was October 28, 2025. D.E. 9. Although the response and accompanying motion for pro bono counsel were not filed on the docket until November 7, 2025, it appears Plaintiff wrote the response on October 25, 2025. *See* D.E. 10, at 1 ("As of October 25 . . . ."). In any event, because Judge Padin did not dismiss the case and instead referred the instant motion to the Undersigned, the Undersigned will consider Plaintiff's motion.

six factors, as enumerated in *Tabron*, to determine whether a pro se plaintiff is eligible to receive pro bono counsel:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;
> (4) the plaintiff's capacity to retain counsel on his or her own behalf;
> (5) the extent to which a case is likely to turn on credibility determinations, and;
> (6) whether the case will require testimony from expert witnesses.

*Id.* (citing *Tabron*, 6 F.3d at 155-57). This non-exhaustive list provides guideposts for the Court's decision, which "must be made on a case-by-case basis." *Tabron*, 6 F.3d at 157-58; *see also Montgomery*, 294 F.3d at 499 (citing *Parham*, 126 F.3d at 457).

Because Judge Padin allowed Plaintiff's Fourteenth Amendment due process right to medical privacy claims to proceed, the Court will find those claims have some merit in fact and law.[3] Op., D.E. 3, at 8. However, after considering the remaining six *Tabron* factors and Plaintiff's motion, the Court concludes that the appointment of pro bono counsel is not appropriate at this time.

The Court begins by considering the first *Tabron* factor: the ability of a plaintiff to present his or her own case. *Montgomery*, 294 F.3d at 501. On this factor, courts generally consider the movant's "education, literacy, prior work experience, prior litigation experience, . . . ability to understand English, and . . . restraints due to confinement." *Woodham v. Sayre Borough Police Dep't*, 191 F. App'x 111, 114 (3d Cir. 2006) (citing *Montgomery*, 294 F.3d at

---

[3] Plaintiff argues that appointed counsel would assist Plaintiff in pursuing all claims in the Complaint. However, because only the Fourteenth Amendment right to medical privacy claim survived the IFP screening process, *see* D.E. 3, and Plaintiff did not timely amend his complaint pursuant to Judge Padin's Opinion and Order, *see* D.E. 3; D.E. 4, the Undersigned analyze the *Tabron* factors only for the surviving right to medical privacy claim.

4

501). Courts also consider the extent of a plaintiff's "access to necessary resources like a typewriter, photocopier, telephone, and computer." *Parham*, 126 F.3d at 459.

Plaintiff has made multiple filings in this case. While "a plaintiff's ability to file and respond to motions does not translate to an ability to present his [or her] own case," *Woodham*, 191 F. App'x at 114 (citing *Parham*, 126 F.3d at 459), it appears from Plaintiff's filings that he is literate and understands English—factors typically weighing against the appointment of counsel.

However, there are clear deficiencies with Plaintiff's filings, and lack thereof. For example, Plaintiff was given forty-five days to amend his complaint to cure deficiencies with the claims that Judge Padin dismissed without prejudice. Op., D.E. 3, at 8. Not only did Plaintiff fail to file an amended complaint, but it also appears Plaintiff is still waiting on Defendants to respond, even though Judge Padin ordered Plaintiff via the Order to Show Cause to advance the action. *See* D.E. 10, at 9 ("Plaintiff is harmed by defendant[']s failure [to] respond . . . ."). Additionally, Plaintiff avers he has limited access to the law library at HCCF, and his handwritten submissions indicate to the Court he may "lack access to necessary resources like a typewriter [or] computer." *Parham*, 126 F.3d at 459. Because there are facts weighing in favor and against appointment of pro bono counsel on the first factor, the Court finds the first *Tabron* factor is neutral.

The Court next weighs the second *Tabron* factor, the complexity of Plaintiff's case. *Montgomery*, 294 F.3d at 499. Complexity supports appointment "where the law is not clear, [as] it will often serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Tabron*, 6 F.3d at 156 (quoting *Maclin v. Freake*, 60 F.2d at 889 (7th Cir. 1981)); *accord Montgomery*, 294 F.3d at 502-03. In assessing this factor, courts consider the complexity not only of the ultimate issue of the case but of the proof and discovery

that issue entails. *Parham*, 126 F.3d at 459; *see also Montgomery*, 294 F.3d at 502-03 (finding appointment appropriate when, despite simple legal issues, discovery and presentation difficulties compromised the plaintiff's case). Furthermore, this factor should be considered in conjunction with evidence speaking to the plaintiff's capacity to present his own case. *Montgomery*, 294 F.3d at 502 (citing *Tabron*, 6 F.3d at 156).

"[T]he Fourteenth Amendment protects an inmate's right to medical privacy, subject to legitimate penological interests." *Doe v. Delie*, 257 F.3d 309, 311 (3d Cir. 2001). "This narrow constitutional right applies in the case of an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread 'through rumor and gossip.'" *Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012), *aff'd*, 489 F. App'x 544 (3d Cir. 2012)) (citations omitted). Courts in this District analyzing the complexity of this claim have found it to be a "straightforward legal issue[.]" *Kwanzaa v. Brown*, No. 05-5976, 2006 WL 2403978, at *23 (D.N.J. Aug. 17, 2006) (denying motion for appointment of pro bono counsel after finding that the claims surviving IFP screening, including the plaintiff's right to medical privacy claim, "were not extraordinary or too complex for plaintiff to prosecute"). Accordingly, the second *Tabron* factor weighs against appointment of counsel.

The Court next considers the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue that investigation. *Montgomery*, 294 F.3d at 499. "[W]here claims are likely to require extensive discovery and compliance with discovery rules, appointment of counsel may be warranted." *Id.* (citing *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992)). At this stage of litigation, it is unclear what factual investigation would be required beyond first determining whether there was a policy or custom by which the HCCF sent

confidential medical information to third parties.[4]  Although Plaintiff asserts he is continually denied access to his medical records, *see* D.E. 10, at 7, Plaintiff fails to demonstrate that these records pertain to his right to medical privacy claim.  Because Plaintiff has not shown that the factual investigation necessary to advance the surviving claim would require extensive discovery, the third *Tabron* factor weighs against appointment of counsel.

The court now looks to the fourth *Tabron* factor, which concerns a plaintiff's capacity to retain counsel on his or her own behalf.  *Montgomery*, 294 F.3d at 499.  Plaintiff last filed an IFP application on April 22, 2025.  *See* IFP Application, D.Es. 1-1 and 1-2.  As explained above, that application was granted on June 17, 2025.  Order, D.E. 4.  Plaintiff's indigent status has not materially changed since then.  D.E. 10.  Plaintiff's indigency weighs in favor of appointing counsel.

In assessing the fifth *Tabron* factor, the Court considers the extent to which Plaintiff's case is likely to depend on credibility determinations.  *Montgomery*, 294 F.3d at 499.  "[P]ro bono counsel may be warranted when witness credibility is a key issue and when the factfinder must decide between conflicting testimony."  *Davis v. Burke*, No. 19-10620, 2022 WL 970220, at *3 (D.N.J. Mar. 30, 2022) (citing *Tabron*, 6 F.3d at 156).  Of course, most cases involve credibility determinations.  *Parham*, 126 F.3d at 460.  Such determinations weigh in favor of appointing counsel if the case would ultimately involve "solely a swearing contest" between witnesses.  *Id.*  Plaintiff does not address this factor in his motion for appointment of pro bono counsel, and it is unclear to the Court at this time whether Plaintiff's right to medical privacy

---

[4] As Judge Padin noted in her Opinion, "it may ultimately be shown that the policy is reasonably related to a legitimate penological interest, and thus not in violation of the Due Process Clause." D.E. 3, at 7.

7

claim will involve a swearing contest between the witnesses.  Accordingly, the fifth *Tabron* factor weighs against the appointment of counsel.

In assessing the sixth and final *Tabron* factor, the Court considers whether Plaintiff's case will require testimony from expert witnesses.  *Montgomery*, 294 F.3d at 499.  Plaintiff argues that expert testimony will be necessary to support his deliberate indifference claim.  D.E. 10, at 8.  As noted above, however, that claim was dismissed during IFP screening.  See D.E. 3, at 8.  It is presently unclear to the Court, and Plaintiff does not address, the ways in which expert testimony could support his Fourteenth Amendment right to medical privacy claim.  Accordingly, the sixth *Tabron* factor weighs against the appointment of counsel.

On balance, and having considered the *Tabron* factors, the Court finds that the appointment of counsel is not warranted at this time.  Although Plaintiff's indigency and incarcerated status weigh in favor of appointment, the sole surviving claim does not present complex legal or factual issues, and it is not yet clear whether the case will turn expert testimony or credibility determinations.  The Court will consider a renewed motion for the appointment of pro bono counsel should these factors become apparent later in the action.  *See Woodham*, 191 F. App'x at 116.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for the appointment of pro bono counsel is **DENIED**.  The Court shall issue an accompanying Order.

*/s/ Michael A. Hammer*
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

**Dated**: January 29, 2026